UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME MENDELL HAILEY,

        Plaintiff,

v.

LARRY CIEPLY, *et al.*,

        Defendants.
_____/

Case No. 1:20-cv-1248

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Jerome Mendell Hailey (referred to as "plaintiff" or "Hailey"), a state prisoner in the custody of the Michigan Department of Corrections (MDOC). Hailey's complaint involves incidents which occurred while he was incarcerated at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Michigan. The only defendants which remain in this action are Unit Chief Larry Cieply and Psychologist "Unknown" Williams (identified by defendants' counsel as Jacquelyn Williams). *See* Opinion (ECF No. 10, PageID.87). The only claims remaining in this case are Hailey's First Amendment retaliation claims against Cieply and Williams. *Id*.

    **I.**    **Background**

The Court summarized plaintiff's retaliation claims against defendants Cieply and Williams as follows:

> Plaintiff alleges that he has several issues that affect his mental health. On October 15, 2020, he transferred to MTU. When Plaintiff arrived, Defendant Williams allegedly told him that he would be sent to administrative segregation because he had filed complaints and grievances on MTU staff three years earlier

1

while incarcerated there. Plaintiff alleges that Defendant Williams further directed a corrections officer to take Plaintiff to administrative segregation and explained that Defendant Cieply had ordered the placement "to protect the staff and prisoners from [Plaintiff]." (Compl., ECF No. 1, PageID.5.) On October 16, 2020, psychologist Chattah (not a defendant) allegedly apologized to Plaintiff and provided further information. Psychologist Chattah allegedly told Plaintiff, "Defendant Cieply is talking of fabricating a SPON [FN 1] against you. It is likely you're going to a [security] level 4 facility." (*Id.*) Several days later, Defendant Reed allegedly told Plaintiff and Defendant Yokom that Defendant Cieply had initiated a SPON. Plaintiff alleges that he had no pending or recent misconduct reports against him at that time. . . .

On November 12, 2020, MDOC transferred Plaintiff to ARF where he again was placed in administrative segregation, and the remainder of Plaintiff's allegations relate to that facility. . . .

Plaintiff alleges that Defendants Cieply and Williams placed him in administrative segregation in retaliation for filing grievances and complaints.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

On initial review, the Court concludes that Plaintiff has alleged facts sufficient to state a First Amendment retaliation claim against Defendants Cieply and Williams. . . .

Plaintiff's First Amendment retaliation claims against Defendants Cieply and Williams remain in the case.

[FN 1] A "SPON" is a "Special Problem Offender Notice." *See* MDOC Policy Directive (PD) 03.03.110 (eff. Nov. 1, 2018) (defining SPON) [hyperlink omitted]. MDOC staff may initiate a SPON when, based on "specific reliable information[,] . . . an offender is believed likely to present a genuine threat to the safety of an identified offender, volunteer, or employee . . . or to the order or security of a correctional facility." *Id.*, ¶ D.

Opinion at PageID.73-74, 81.

## II. Defendants' motion for summary judgment

### A. Legal standard for summary judgment

Defendants Cieply and Williams seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

3

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to

4

'properly exhaust.'" *Jones*, 549 U.S. at 218.  Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint.  *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ Q and S.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

**3.     Discussion**

Hailey's grievance history is set out in his MDOC Prisoner Step III Grievance Report ("Grievance Report") (ECF No. 21-3).  The Grievance Report does not show any grievances filed by Hailey while at MTU during his short stay at that facility in 2020.   Defendants seek summary judgment because Hailey did not file any grievances against them during the relevant time period.

In his response, Hailey states that he "wrote" grievances on October 16, 19, 21 and 23, 2020 against defendants Cieply, Williams and others.   See Hailey's Response (ECF No. 25). In this regard, Hailey presented a number of unfiled grievances with no identifiers or responses from MDOC officials. See Grievance Forms (ECF Nos. 25-1 to 25-33, PageID.158-208); Policy Directive 03.02.130 ¶ X ("The Grievance Coordinator shall log and assign a unique identifying number to each Step I grievance received, including those that may be rejected. A computerized grievance tracking system shall be used for this purpose."). Hailey also included copies of unfiled, home-made appeal forms with no identifiers or responses from MDOC officials.   See Grievance Forms.   Hailey stated that he sent the documents, along with kites, to "Grievance Coord. Lake" at MTU.   Hailey's Response at PageID.151-153.

Hailey's Response, which included a declaration under penalty of perjury[1], included the following argument/declaration:

> In conclusion, plaintiff's illustrations [sic] that the officials made the administrative remedies 'unavailable' when on 10/23/2020 ADW Yokom threatens plaintiffs' [sic] life for complaining about his conditions of confinement in

---

[1] Hailey's response contains the following declaration: "I, Jerome Hailey, understand that a false statement can subject me to the penalties of perjury.  I, Jerome Hailey, therefore, declare under the penalties of perjury that the above aforementioned events are true and correct." Response at PageID.153.

administrative segregation stating in a hostile manner, "You think that's something I can leave your ass in that cell and watch you rottens [sic] to death and wouldn't care, try me [sic]!". Therefore, this Court should not grant defendants' summary judgment motion and find plaintiff provided facts that establish a genuine dispute in opposition to defendants' motions [sic]."

*Id*. at PageID.153.

In their reply, defendants presented affidavits from the individuals responsible for processing grievances at MTU. In his affidavit, MTU Grievance Coordinator Nicholas Lake stated: that he did not recall receiving any of the Step I grievances, Step II appeals, or kites referenced by Hailey; and, that he found no records that his office received any of the documents. Nicholas Lake Aff. (ECF No. 27-2, PageID.220). In addition, Lake performed a search of Hailey's database for grievances at MTU, but this did not return any of the documents identified by Hailey. *Id*.; Printout (ECF No. 27-2, PageID.222). Lake received one kite from Hailey in 2020 (ECF No. 27-2, PageID.220, 223). This kite, which Lake received on October 28, 2020, involved a property dispute not related to any grievances against defendants Cieply or Williams. *Id*. Lake's response included a copy of an e-mail which he sent to another MDOC employee on October 28, 2020 related to the kite. PageID.220, 224.

In his affidavit, MDOC Grievance Section Manager Richard Russell stated that:

MDOC has no records that Hailey submitted any documents to Step III in 2020. All Step III submissions from Hailey would have been logged and responded to, and the Step III Grievance Report does not show any entries as having been received in 2020. This indicates that Hailey did not submit any documents to Step III. MDOC also has no records that Hailey submitted any letters to Step III in 2020 or 2021 inquiring about Step III submissions.

Russell Aff. (ECF No. 27-3, PageID.228).

The issue for the Court is whether Hailey presented sufficient evidence to create a genuine issue of material fact on whether he properly exhausted grievances against defendants

7

Cieply and Williams.  Neither the MTU Grievance Coordinator, the MDOC Grievance Section Manager, nor the MDOC itself has any record that Hailey filed grievances or appealed grievances against defendants Cieply or Williams during the relevant time period. Hailey is aware of the procedure for filing grievances under the MDOC Policy Directives; his Grievance Report lists 16 grievances which he filed at various correctional facilities in 2017, 2018 and 2020.   In the absence of any records that Hailey filed a grievance under Policy Directive 03.02.130, Hailey contends that he exhausted his claims in the present case using his own grievance procedure in which: no grievances were filed with or received by the MDOC; no identifiers were assigned to the grievances or appeals; and, no responses were filed by any prison officials.   Hailey's exhaustion claim is blatantly contradicted by the record and no reasonable jury could believe that he properly exhausted grievances against defendants Cieply and Williams.   *See Scott*, 550 U.S. at 380. Based on this record, Hailey did not properly exhaust a grievance against defendants with respect to the incidents alleged in the complaint. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

In addition, Hailey's argument/declaration makes the conclusory statement that former defendant Yokom "made the administrative remedies 'unavailable'" does not create a genuine issue of fact which precludes granting defendants' motion for summary judgment.   In addressing a similar "availability" argument raised by Hailey in a previous lawsuit, the Sixth Circuit stated the rule that:

> Congress requires a prisoner to exhaust only "available" administrative remedies. 42 U.S.C. § 1997e(a). A prisoner thus must "exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"

*Jerome Mendel Hailey v. Trombley Noble*, No. 20-1631, 2020 WL 7706396 at *2 (6th Cir. Dec. 18, 2020) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016).

Here, Hailey stated that Yokom made a hostile comment to him, *i.e.*, "I can leave your ass in that cell and watch you rottens [sic] to death and wouldn't care." Contrary to Hailey's contention, Yokom's statement does not establish that administrative remedies were unavailable. Hailey's argument/declaration draws no connection between Yokom's hostile statement and Hailey's legal conclusion that this statement made administrative remedies unavailable. Affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment. *Sigmon v. Appalachian Coal Properties, Inc.*, 400 Fed. Appx, 43, 49 (6th Cir. 2010). *See Stine v. State Farm Fire & Casualty Company*, 428 Fed. Appx. 549, 550 (6th Cir. 2011) (a "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment"). *See also, Hailey*, 2020 WL 7706396 at *2 (Sixth Circuit rejected Hailey's conclusory claim that the grievance procedure was unavailable because "officers consistently rejected grievance forms", finding that "no reasonable jury could agree that the grievance process was unavailable" based on Hailey's explanation that "unspecified 'facts on the ground demonstrate that' no potential for relief existed"). For all of these reasons, defendants' motion for summary judgment should be granted.

### III.    Recommendation

Accordingly, I respectfully recommend that defendants' Cieply and Williams' motion for summary judgment (ECF No. 20) be **GRANTED** and that this action be **TERMINATED**.

Dated: October 14, 2022          /s/ Ray Kent
                                 RAY KENT
                                 United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).